IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE S. BUSSINGER, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 07-03994 |
| | : | |
| v. | : | |
| | : | |
| THE PHILADELPHIA PRISON | : | |
| SYSTEM, et al., | : | |
| | : | |
| Defendants. | : | |

### OPINION AND ORDER

Slomsky, J.                                                                 August 3, 2009

### I. Introduction.

Before the Court is the Motion for Summary Judgment of Defendants Louis Giorla, John Delaney, Eric Ruhland, Alfredo White, Leon A. King, Walter Dunleavy, J.R. Anderson, and Joseph Glynn (collectively, "individual Defendants") and the City of Philadelphia Law Department (collectively, "Moving Defendants").    On November 13, 2006, Plaintiff acting pro se filed a Complaint in the Philadelphia Court of Common Pleas against Moving Defendants and Defendant Philadelphia Prison System ("PPS").  PPS is not a party to this Motion for Summary Judgment and remains a defendant in this action.

Plaintiff's Complaint alleges that he was the victim of retaliation by Philadelphia Prison System employees while he was a pretrial and/or post-trial detainee.  The Complaint alleges violations of Plaintiff's First, Eighth, and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, and Article 1, §§ 1, 7, and 26 of the Pennsylvania Constitution.  On September 24, 2007, Defendants removed the action to the United States District Court for the Eastern District of Pennsylvania.  Counsel entered his appearance on behalf of Plaintiff in September 2008.

Moving Defendants filed the present Motion for Summary Judgment on June 19, 2009, alleging that Plaintiff had not produced sufficient evidence to support his claims for the alleged violations of his First, Eighth, and Fourteenth Amendment rights and that Plaintiff was not entitled to relief for the alleged violations of his rights secured by the Pennsylvania Constitution.[1]  For reasons that follow, the Court grants the City of Philadelphia Law Department's Motion for Summary Judgment on all claims and individual Defendants' Motion for Summary Judgment on Plaintiff's Eighth and Fourteenth Amendment liberty interest claims.  The Court also holds that Plaintiff is not eligible to recover monetary damages based on the alleged violations of his rights secured by the Pennsylvania Constitution.  However, the Court finds that there is a genuine issue of material fact on Plaintiff's claim of retaliation, and will allow Plaintiff's First Amendment retaliation claim to proceed against individual Defendants except for Walter Dunleavy.  Plaintiff has not put forth sufficient evidence of Dunleavy's personal involvement in the violations alleged.

## II.  General Background.

On June 14, 2004, Plaintiff, an inmate at the Philadelphia Industrial Correctional Center ("PICC")[2], witnessed correctional guards beating another inmate.  (Plaintiff's Dep., Def. Ex. B at 12:8-13:6).  Plaintiff reported the beating to the U.S. Attorney's Office for the Eastern District of

---

[1] In Plaintiff's Response to Defendants' Motion for Summary Judgment, Plaintiff requested an extension of the discovery deadline for the purpose of obtaining Plaintiff's handwritten grievances, misconduct reports, and disciplinary hearing findings.  Plaintiff also requested that the Court withhold a decision on Defendants' Motion for Summary Judgment until after this discovery had been provided.  After submitting this Response, Plaintiff's counsel informed the Court that the Court can proceed to rule on Defendants' Motion based on the current record in this case.

[2] PICC is an institution maintained by the Philadelphia Prison System.

Pennsylvania.  (Id. at 13:15-21, 14:8-19).  At the time, Defendant Captain Joseph Glynn was a

Disciplinary Hearing Officer within the Philadelphia System, and Defendant Correctional Officer

Alfredo White was also employed by the system.  Glynn heard that Plaintiff had reported the incident

within a few days.  (Glynn Dep., Pl. Ex. L at 5).  He knew five of the eight officers charged.  White

read about the incident in the newspapers.  (White Dep., Pl. Ex. K).  Meanwhile, the Prison System

was conducting a full investigation.  (See Pl. Ex. B).  According to Plaintiff, eight officers were

suspended and five were ultimately indicted by a federal grand jury, before which Plaintiff testified.

(Pl. Aff., Pl. Ex. I, ¶ 31).

On July 2, 2004, a lockdown was instituted at PICC after a fight and knifing occurred.

During the lockdown, unknown Correctional Officers searched Plaintiff's cell and found a carton

of cigarettes and a cell phone.  (See Def. Ex. C).  Plaintiff was charged with possession of these

items and with conspiring with his cellmate, August Rinalli, to possess them.  At that time, Rinalli

had been Plaintiff's cellmate for eight days.  Plaintiff claims that he had spent those days in the law

library and had no knowledge of the contraband.  (Pl. Dep. at 22).  He also claims that Rinalli

admitted that he alone owned and possessed the contraband.  (Pl. Aff. ¶ 36).

On July 8, 2004, Defendant Glynn conducted Plaintiff's disciplinary hearing.  (Pl. Dep. at

22).  Plaintiff alleges that while he was waiting outside the hearing room, he overheard Glynn accuse

Rinalli of covering for Plaintiff and ordered him to "Stop F'ing lying."  (Id.).  Plaintiff further alleges

that when he entered the hearing, Glynn said to him, "Well, you know this ain't a court of law and

you know I'm going to find you guilty."  (Id. at 23).

Glynn found Plaintiff guilty of all charges and imposed a penalty of fifteen days disciplinary

segregation followed by administrative segregation.  (Pl. Aff. ¶ 36).  Plaintiff ultimately spent four

and one half months in punitive and administrative segregation. (<u>Id.</u> ¶ 37). Plaintiff described this as "an extraordinarily long time for even somebody who was guilty." (Pl. Dep. at 26. (<u>Id.</u> at 7:8-24). Plaintiff, who had been issued an order by the Philadelphia Court of Common Pleas granting him additional access to the law library, estimates that during his time in segregation, his access to the law library was reduced by more than 95%. (Pl. Aff. ¶ 44).

When Plaintiff was released from segregation in November 2004, he appealed numerous grievances to Defendant Leon A. King regarding his reduced access to the law library. (Pl. Aff. ¶ 45). King replied that the Court of Common Pleas had no authority to issue the order granting him access to the law library and that his law library privileges had been suspended as a result of his misconduct. (<u>Id.</u> ¶ 46; <u>see</u> Pl. Ex. I, Att. B).

On August 1, 2005, Plaintiff filed a grievance against Defendant Lieutenant Ruhland. (Pl. Aff. ¶ 49). In this grievance, Plaintiff accused Ruhland of retaliating against him because Ruhland thought that Plaintiff had reported him "for violating policy and getting the key to the commissary room and taking commissary out of prisoners bags before they receive them." (<u>Id.</u> ¶ 49). On the following two days, Plaintiff filed grievances against Ruhland for threatening him. (<u>Id.</u> ¶¶ 50, 51). On August 4, 2005, because of these grievances against Ruhland, Plaintiff was transferred from PICC to Curran Fromhold Correctional Facility ("CFCF"). (<u>Id.</u> ¶ 52, Pl. Dep. at 43:4-5; 54:4-6). Defendants Louis Giorla, John Delaney, Alfredo White, Leon King, and J.R. Anderson participated in the decision to transfer Plaintiff from PICC to CFCF (Pl. Dep. at 74:6-15).

At CFCF, on two separate occasions, Plaintiff was assigned to a cell that did not have a window or mattress. (<u>Id.</u> at 44:12-13). Plaintiff filed grievances about these conditions. (<u>Id.</u> at 46:9-18, 48:9-16). As a result of each grievance, Plaintiff was given a mattress and transferred to a

different cell.  (<u>Id.</u> at 46:19-24, 48:14-16, 51:23-24).

Plaintiff's transfer to CFCF reduced his access to the law library.  (<u>Id.</u> at 54:10-22).  An officer is always present in the library at PICC, but at CFCF, an officer is not always present and Plaintiff could only access the library when an officer was there.  (<u>Id.</u> at 54).  Plaintiff claims that this was "a known result" of the transfer.  Plaintiff claims that he was not allowed access when he should have been afforded access in accordance with the Court order, and was ordered to use the library at times when he did not want to report there.  Consequently, Plaintiff was charged with failure to report to the library in late August, 2005.  (<u>See</u> Exhibit E).

On August 30, 2005, Defendant Correctional Officer J.R. Anderson assaulted Plaintiff.  (Pl. Dep. at 66; Pl. Aff. ¶ 54).  Defendant admits that this assault occurred.  (<u>See</u> Def. Statement of Undisputed Facts).  Plaintiff claims that Defendant Anderson threatened him, grabbed him, and slammed him against the wall.  (Pl. Dep. at 66).  Resulting injuries, if any, did not require hospital attention.  (<u>Id.</u> at 67).

On September 22, 2005, Defendant Louis Giorla wrote a report charging Plaintiff with misconduct.  (Pl. Aff. ¶ 57).  Plaintiff was placed in punitive segregation.  Plaintiff also alleges that Defendant Alfredo White took his law supplies, including his "Pens, MRI, Index Cards, Labels, Diskettes w/ information on them, Tape, Mimi-Clips, + Post-It's" without issuing a receipt.  (<u>See</u> Exhibit D).  These items were owned by Plaintiff and purchased via funds from the Court.  (<u>Id.</u>). Plaintiff alleges that White also harassed and threatened him during this incident.  (<u>Id.</u>).  Plaintiff claims that at his disciplinary hearing for the alleged underlying misconduct, the hearing examiner dismissed the misconduct charge for lack of legitimacy.  (Pl. Aff. ¶ 58).

On January 17, 2006, Plaintiff sent a letter to Chief of Staff Resnick asking that Defendant

Glynn's finding that Plaintiff was guilty at the July 8, 2004 disciplinary hearing as noted above be reexamined in light of information that Glynn had embezzled more than $12,000 from a PPS bank account.  (Id. ¶ 59).  According to Plaintiff, on February 3, 2005, Giorla ordered that Plaintiff be sent to punitive segregation and receive a misconduct for writing this letter, even though PPS policy prohibits placing a prisoner in punitive segregation before receiving a hearing on a misconduct charge unless the prisoner is a danger to himself, others, or to the secure and orderly running of the institution.  (Id. ¶ 60, 61).  The misconduct quoted Plaintiff's letter referring to "corrupt PPS officials" and stating that Glynn was "crooked."  (See Pl. Ex. F).  It charged Plaintiff with lying, theft, and disrespecting staff members.  (Pl. Aff. at ¶62).  The hearing examiner found Plaintiff guilty of lying and disrespecting staff but not guilty of theft.  (Id. ¶ 63; see Pl. Ex. F).

### III. The Summary Judgment Standard.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In examining Defendants' motion, we must view the facts in the light most favorable to the Plaintiff and draw all reasonable inferences in his favor.  InterVest, Inc. v. Bloomberg, L.P., 340 F.3d 144, 159-60 (3d Cir. 2003).

The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact.  Fed. R. Civ. P. 56(c).  Once the movant has done so, the opposing party cannot rest on the pleadings.  To defeat summary judgment, the party must come forward with probative evidence establishing the prima facie elements of his claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The nonmovant must show more than the "mere existence

of a scintilla of evidence" for elements on which he bears the burden of production.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  An inference based upon speculation or conjecture does not create a material fact.  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n. 12 (3d Cir.1990).


## IV.  Discussion

Plaintiff has brought claims against Moving Defendants for violations of his First, Eighth, and Fourteenth Amendment rights protected by the United States Constitution, pursuant to 42 U.S.C. § 1983, and Article 1, §§ 1, 7, and 26 of the Pennsylvania Constitution.  Section 1983 provides a remedy for a Plaintiff who can show that (1) the Plaintiff was deprived of a right secured by the United States Constitution and (2) that the alleged violation was committed by a person acting under color of state law.  Parratt v. Taylor, 451 U.S. 527, 535 (1981) (rev'd on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)).  Plaintiff seeks monetary damages including costs of the action; punitive, compensatory and/or delay damages; and interest.  Plaintiff's First, Eighth and Fourteenth Amendment, and Pennsylvania Constitutional allegations will be addressed in turn.  Defendant also asserts that barriers to suit prevent Plaintiff's claims against individual Defendants and the City of Philadelphia Law Department.  The Court will then discuss these potential barriers to suit.


## A. First Amendment claim

Plaintiff has brought a First Amendment retaliation claim against prison officials.[3]  To state

---

[3] The First and Eighth Amendments apply to state officials via the Fourteenth Amendment.

a prima facie case against prison officials for retaliation, "an inmate must prove that: 1) he engaged in constitutionally protected conduct; 2) he suffered 'adverse action' at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." Allah v. Al-Hafeez, 208 F.Supp.2d 520, 534-35 (E.D. Pa. 2002) (citing Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)).  "Once a prisoner has made his prima facie case, the burden shifts to the defendant to prove by a preponderance of evidence that it 'would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.'" Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002) (quoting Rauser, 241 F.3d at 334).

Defendants do not contest that Plaintiff has satisfied the first two prongs of a First Amendment retaliation claim.  First, Plaintiff engaged in constitutionally protected conduct when he reported to the U.S. Attorney's Office for the Eastern District of Pennsylvania that correctional officers beat another inmate.  There are also other reports of alleged officer misconduct in the record. Second, Plaintiff has alleged a number of retaliatory actions, including his transfer from PICC to CFCF, being forced to sleep in a cell without a window or mattress on two occasion, reduced access to the law library, and various acts of intimidation and harassment by officers.

Defendants argue, however, that Plaintiff cannot survive summary judgment because he cannot produce sufficient evidence to show that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.  They explain that Plaintiff has not produced any evidence to show that any of the defendants were aware of Plaintiff's report to the U.S. Attorney's Office; that Plaintiff's transfer to CFCF was based on his complaint against Defendant Ruhland and not due to Plaintiff's report; and Plaintiff's reduced access to the law library occurred only because of procedures in place at CFCF.

-8-

Viewing the evidence in the light most favorable to Plaintiff as is required at the summary judgment stage, this Court finds that Plaintiff has put forth sufficient evidence from which a jury could deduce that Plaintiff's constitutionally protected conduct was a substantial or motivating factor for disciplinary decisions.  Plaintiff has produced evidence that at least some of the Defendants were aware of his report to the U.S. Attorney's Office.  (See Glynn Dep., White Dep.).  A few weeks after Plaintiff reported this incident, Plaintiff was placed in disciplinary and administrative segregation for four and a half months for possessing contraband.  Based on the proximity of the report to the punishment, and evidence Plaintiff has presented showing that the contraband did not belong to him, that the punishment was unusually long even if he had been guilty, and statements made to him during the disciplinary hearing, the Court finds that there is a genuine issue of material fact as to causation.   Moreover, Plaintiff's internal complaints and grievances against officers may also be considered constitutionally protected actions.  See Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999) (describing what kinds of speech are considered protected in different settings and deciding that prisoners' speech does not have to be a matter of public concern to qualify as protected speech).  Plaintiff has produced sufficient evidence to show that those complaints may be linked to alleged retaliatory actions such as his transfer and various acts of intimidation and harassment.

**B. Eighth Amendment Claim**

Plaintiff alleges in his Complaint that his Eighth Amendment rights have been violated. An official can be held liable for a prisoner's conditions of confinement under the Eighth Amendment only when the official's act or omission results in the denial of "the minimal

civilized measure of life's necessities" and the official exhibits "deliberate" indifference to the inmate's health and safety.  Farmer v. Brennan, 511 U.S. 834, 834 (1994) (internal quotations omitted).  Here, Plaintiff was placed in a windowless cell without a mattress twice.  These conditions did not deny Plaintiff of life's necessities.  Moreover, he was moved after he submitted his grievances.  Plaintiff has produced no evidence to prove officers' deliberate indifference.  Therefore, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

**C. Fourteenth Amendment Claim**

Plaintiff's Complaint alleges that his Fourteenth Amendment rights have been violated. He does not specify which clause of the Fourteenth Amendment he believes has been violated, nor does he specify which actions led to the Fourteenth Amendment violation.  Based on the facts pled by Plaintiff, it appears that Plaintiff is raising a Fourteenth Amendment liberty interest claim.  To the extent that this is a claim independent from Plaintiff's First Amendment retaliation claim, it should be dismissed.  Plaintiff was in disciplinary segregation for four and one half months.  (Pl. Dep. at 23).  However, the United States Supreme Court and Third Circuit Court of Appeals have consistently held that placing an inmate in a segregation unit does not implicate a prisoner's Fourteenth Amendment liberty interest.  See, e.g., Sandin v. Conner, 515 U.S. 472, 486-87 (1995); Torres v. Fauver, 292 F.3d 141, 151 (3d Cir. 2002); Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002).  In the absence of evidence to support a Fourteenth Amendment violation, Plaintiff's claim will be dismissed.

**D. Pennsylvania State Constitutional Claims**

Plaintiff's Complaint alleges violations of his rights protected by Article 1, §§ 1, 7, and 26 of the Pennsylvania State Constitution.  These sections protect the inherent rights of mankind, freedom of speech and the press, and govern claims against the Commonwealth, respectively. Plaintiff is barred from recovering monetary damages based on these claims.  See Jones v. City of Philadelphia, 890 A.2d 1188 (Pa. Commw. Ct. 2006) (holding that there is no right to monetary damages for an alleged violation of the Pennsylvania Constitution).  Plaintiff's Complaint does not ask for any non-monetary damages.

**E. Barriers to Suit**

In addition to addressing the merits of Plaintiff's claims, Defendants argue that they are entitled to Summary Judgment because of several legal barriers to this suit.  Individual Defendants argue that claims against them must be dismissed because Plaintiff has not demonstrated their personal involvement and because they are entitled to qualified immunity.  A defendant in a civil rights action can only be held liable if he had personal involvement in committing the alleged violation.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  In other words, Defendants cannot be held vicariously liable for the actions of others.  Individual Defendants argue that "Plaintiff has not alleged and has not adduced any evidence that any of the defendants were personally involved or responsible for his transfer to CFCF, for the conditions of the cell . . . or his reduced access to the law library after he was transferred to CFCF."  (Def.

Brief at § IV.A.5).

To the contrary, Plaintiff has put forth evidence of individual Defendants' involvement in various retaliatory acts. Plaintiff alleged that Defendant Glynn presided over his "sham" disciplinary hearing; that Defendants Giorla, Delaney, White, King, and Anderson participated in the decision to transfer him to CFCF; that Defendant White took Plaintiff's legal supplies; that Defendant Anderson assaulted Plaintiff and harassed him in his use of the prison library; that Defendant King denied him access to the law library; and that Defendant Ruhland harassed and intimidated Plaintiff during the relevant time period. (See Pl. Dep. at 74:8-15; § II., General Background, supra; Pl. Brief at 9-10). The Court finds that Plaintiff has presented sufficient evidence from which a jury could conclude that these individual Defendants were involved in retaliatory actions. Plaintiff, however, has not put forth sufficient evidence regarding Defendant Dunleavy's involvement.[4] Thus, the Court will grant Defendant Dunleavy's Motion for Summary Judgment and dismiss him as a defendant here.

Individual Defendants also allege they should be dismissed on the grounds of qualified immunity. "Qualified immunity, as the Supreme Court has explained, is the principle that

---

[4] The only evidence in regard to Defendant Dunleavy is that (1) on July 30, 2003, Dunleavy overrode Major Lawton's policy oriented order and placed Plaintiff in pre-hearing detention and (2) that Defendant Dunleavy responded to Plaintiff's grievances concerning Defendant Ruhland. (See Pl. Aff. ¶ 19; Pl. Dep. at 36; Pl. Ex. D; Pl. Ex. I Att. A). Plaintiff's action is for retaliation, and he does not allege that any protected activity occurred prior to July 30, 2003. (See § IV.A, supra). Thus, the evidence does not support the present action. The evidence Plaintiff presents on Dunleavy's responses to Plaintiff's allegations against Ruhland shows that Dunleavy routinely told Ruhland to abide by orders given by the office and reprimanded Ruhland when he did not do so. There is no evidence presented that Dunleavy was personally involved in any retaliatory actions against Plaintiff. Dismissal of Defendant Dunleavy as a defendant in this case is therefore appropriate.

'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Walter v. Pike County, Pa.</u>, 544 F.3d 182 (3d Cir. 2008) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  In short, qualified immunity shields individual Defendants from personal immunity if they "reasonably believe[d] that [their] . . . conduct complie[d] with the law." <u>Pearson et al. v. Callahan</u>, 129 S.Ct. 808 (2009).  Individual Defendants argue that because their conduct did not violate Plaintiff's constitutional rights, they are shielded by qualified immunity.  The Court rejects this argument because there is a genuine issue of material fact as to whether Plaintiff's First Amendment rights were violated.  Where the allegations against individual Defendants are that they committed retaliatory acts, it cannot tenably be argued that Defendants reasonably believed their actions complied with the law.  Thus, individual Defendants are not shielded by qualified immunity.

Plaintiff has also named the City of Philadelphia Law Department as a defendant in this suit.  Defendants argue that Plaintiff has not met his burden under <u>Monell</u> to recover from the City of Philadelphia.  The Court agrees with this argument.   A municipality is only liable if a plaintiff can prove that employees were executing an officially adopted policy declared by City officials or that employees were executing an officially adopted custom of the municipality. <u>Monell v. Dept. of Soc. Servs. of the City of New York</u>, 436 U.S. 658 (1978).  Defendants claim that Plaintiff has failed to demonstrate either possibility.  Plaintiff's response is twofold.  First, Plaintiff asserts that he has put into evidence that it was the custom of the City to harass him. <u>See</u> Pl's Aff. ¶64 ("The defendants have a clear and proven pattern, practice, and undisputable

-13-

history of retaliating against me for writing grievances.").  But even if Plaintiff can show a pattern of harassment, he has not put forth evidence to show that this was an "officially adopted" custom as required under <u>Monell</u>.  Second, Plaintiff cites to Commissioner King's letter stating that Plaintiff lost his law library privileges due to contraband found in his cell.  Plaintiff asserts that this decision amounts to defiance of the Order of the Court of Common Pleas and shows an official custom.  <u>See</u> Ex. I, Att. B.  However, there is no evidence in the record indicating that this letter represented an official policy of the prison or that the prison otherwise had any official policy denying prisoners judicially-mandated access to law libraries.  Therefore, the City of Philadelphia Law Department is entitled to Summary Judgment and dismissal from this lawsuit.

In sum, Defendant Walter Dunleavy and the City of Philadelphia Law Department are entitled to summary judgment on all counts because Plaintiff has failed to put forth evidence of Dunleavy's personal involvement or that the acting individuals were carrying out an official policy of the City of Philadelphia.  Plaintiff is entitled to proceed on his First Amendment claim against all other individual Defendants.

### V.  Conclusion.

For the foregoing reasons, the Court will grant the City of Philadelphia Law Department's and Walter Dunleavy's Motion for Summary Judgment on all counts.  The Court will grant the other individual Defendants' Motions for Summary Judgment on Plaintiff's Eighth Amendment and Fourteenth Amendment liberty interest claims, but will deny their Motion for Summary Judgment on Plaintiff's First Amendment claims.  The Court holds that Plaintiff is not entitled to

recover monetary damages on his Pennsylvania Constitutional claims.

An appropriate Order follows.